UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIKELL CALVERT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0257** |
| **BURL CAIN** | **SECTION "J"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.      State Factual and Procedural Background**

The petitioner, Mikell[2] Calvert ("Calvert"), is a convicted prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3] On May 13, 2005, Calvert was charged by bill of information in Washington Parish with four counts of the sexual battery.[4] He entered a plea of not guilty to the charges on October 5, 2005.[5]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] The petitioner's first name is also spelled "Mickell" throughout the state court records.

[3] Rec. Doc. No. 1.

[4] St. Rec. Vol. 1 of 3, Bill of Information, 5/13/05.

[5] St. Rec. Vol. 1 of 3, Minute Entry, 10/5/05.

The record reflects that, Calvert and his wife lived in one-half of a duplex apartment building while the victim, A.H.,[6] and her mother lived in the adjacent area.[7] A.H.'s mother was closely acquainted with Calvert and his wife, and she trusted them. She occasionally left A.H. in the duplex and trusted Calvert to supervise her. A.H. was fifteen (15) years old at the time of these incidents.

Before the incidents in question, A.H. also considered Calvert to be a friend and a mentor to whom she would talk about her problems. The incidents in question occurred on four occasions when A.H. was around fifteen (15) years old and was left alone at the duplex apartments.

On the first occasion, Calvert told A.H. that he was in love with her and wanted to be with her. Calvert kissed her on her neck, and she told him to stop. Calvert then forced himself on top of her. He left, however, after A.H. again told him to stop.

A.H. later went to the Calvert's apartment "to apologize . . . for being mean." Calvert told her that he had something to show her in his bedroom. As she sat on the bed, Calvert "went down" on her and again forcefully positioned his body over hers. After A.H. repeatedly told him to stop, Calvert allowed her to leave. During this incident, Calvert touched her "private area" with his "private area."

On another occasion, Calvert visited A.H. while she was in her apartment alone and waiting for her boyfriend to arrive. A.H. eventually fell asleep. She awakened to find Calvert on top of her, raping her as "he was sticking his thing inside of me when I woke up." A.H. repeatedly told him to stop. After she told him to stop for the third or fourth time, he stopped and left the apartment.

---

[6]Under Louisiana law, the victim is referred to by her initials. *See* La. Rev. Stat. Ann. § 46:1844(W). This court will do the same in keeping with the state court records.

[7]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Calvert*, 968 So.2d 255 (La. App. 1st Cir. 2008) (Table); *State v. Calvert*, No. 2007KA1910, 2007 WL 2332323, at *1, *5-6 (La. App. 1st Cir. Jun. 6, 2008); St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 2007-KA-1910, pp. 2-3, 9-11, 6/6/08.

The final incident occurred when A.H. visited Calvert at his apartment. At that time, Calvert pulled her onto his bed and again forcefully placed his body over hers. A.H. testified that she told Calvert "no" before he forced himself on her. She explained to him that she thought of him as only a friend. Calvert complied with her request that he stop and allowed her to leave the apartment.

Calvert used force in his physical contact with A.H. on those occasions when he threatened to hurt her and her parents if she told anyone about the incidents. She delayed telling anyone about the incidents because she was afraid. A.H. eventually told her mother that Calvert raped her. The incidents were reported to the police, and A.H. was interviewed at the Children's Advocacy Center in Covington, Louisiana.

Calvert was tried before a jury on March 26 and 27, 2007, and was found guilty on count one of sexual battery, on count two of attempted sexual battery, on count three of attempted sexual battery, and on count four of simple assault.[8] At a hearing held March 28, 2007, the Trial Court denied Calvert's motions for new trial and for post-verdict judgment of acquittal.[9]

The Trial Court thereafter sentenced Calvert on March 29, 2007, to serve ten years at hard labor on count one (sexual battery) without benefit of parole, probation, or suspension of sentence.[10] He was sentenced to serve five years at hard labor on counts two and three (attempted sexual battery) without benefit of parole, probation, or suspension of sentence. On count four (simple

---

[8] St. Rec. Vol. 1 of 3, Trial Minutes, 3/26/07; Trial Minutes, 3/27/07; Jury Verdict (Count 1), 3/27/07; Jury Verdict (Count 2), 3/27/07; Jury Verdict (Count 3), 3/27/07; Jury Verdict (Count 4), 3/27/07; Trial Transcript, 3/26/07; Trial Transcript, 3/27/07; St. Rec. Vol. 2 of 3, Trial Transcript (continued), 3/27/07.

[9] St. Rec. Vol. 1 of 3, Minute Entry, 3/28/07; Motion for New Trial, 3/28/07; Trial Court Order, 3/28/07; Motion for Post-Verdict Judgment of Acquittal, 3/28/07; Trial Court Order (2), 3/28/07.

[10] St. Rec. Vol. 1 of 3, Sentencing Minutes, 3/29/07; St. Rec. Vol. 2 of 3, Sentencing Transcript, 3/29/07.

assault), the Court sentenced him to serve six (6) months in the parish jail. The Court also ordered that the sentences be served concurrently and denied Calvert's motion to reconsider the sentences.[11]

On direct appeal to the Louisiana First Circuit Court of Appeal, Calvert's appointed counsel raised four assignments of error:[12] (1) the prosecutor made an impermissible reference to defendant's failure to make a statement to police; (2) the trial court erred in allowing evidence of other crimes; (3) the evidence was insufficient to support the convictions; and (4) the Trial Court imposed an excessive sentence as to count one.

On June 6, 2008, the Louisiana First Circuit affirmed Calvert's convictions and three of his sentences finding no merit to the claims raised.[13] On review for errors patent, the Court determined that the maximum sentence available for count four, simple assault, was only ninety (90) days. The Court amended the sentence and directed the Trial Court to correct the sentencing minutes and the criminal commitment to reflect the amended sentence.

Calvert's convictions and sentences became final thirty (30) days later, on Monday, July 7, 2008,[14] because he did not file for rehearing or timely seek review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).

---

[11]*Id.*; St. Rec. Vol. 1 of 4, Motion to Reconsider Sentence, 3/29/07; Trial Court Order, 3/29/07.

[12]St. Rec. Vol. 3 of 3, Appeal Brief, 2007-KA-1910, 2/29/08.

[13]*State v. Calvert*, 968 So.2d at 255; *State v. Calvert*, 2007 WL 2332323, at *1; St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 2007-KA-1910, 6/6/08.

[14]Day thirty (30) was Sunday, July 6, 2008. The deadline then fell to Monday, July 7, 2008. *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period).

On July 8, 2008, Calvert submitted an untimely writ application to the Louisiana Supreme Court seeking review of certain of his appeal claims.[15] The Court denied the application without stated reasons on April 17, 2009.[16]

In the meantime, however, on June 2, 2009, Calvert submitted an application for post-conviction relief to the state trial court raising the following grounds for relief:[17] (1) ineffective assistance of counsel where counsel (a) failed to file a motion to suppress the evidence when the only evidence was the victim's statements and the DNA did not match, (b) failed to investigate, (c) failed to file a motion to obtain impeaching statements from the victim about when she first had sex with Calvert, and (d) failed to challenge the defective bill of information; (2) the evidence was insufficient to support the verdict; and (3) he was exposed to double jeopardy because he was arrested on four counts of forcible rape, which charges were changed by the district attorney and the verdict was returned on other offenses. The Trial Court denied the application on June 23, 2009, finding that the application failed to state a valid ground on which relief could be granted.[18]

On August 7, 2009, Calvert submitted an untimely[19] writ application to the Louisiana First Circuit in which he raised other claims:[20] (1) the Trial Court denied him due process in failing to give adequate review to his post-conviction claims; (2) counsel was ineffective where he (a) failed

---

[15] St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 08-KH-1602, 7/17/09 (postmarked 7/8/08).

[16] *State v. Calvert*, 6 So.3d 784 (La. 2009); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2008-KH-1602, 4/17/09; La. S. Ct. Writ Application, 08-KH-1602, 7/17/09 (postmark 7/8/08); St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2008-KH-1602, 7/17/08 (showing postmark of 7/8/08).

[17] St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 6/9/09 (dated 6/2/09).

[18] St. Rec. Vol. 2 of 3, Trial Court Order, 6/23/09.

[19] Under La. App. R. 4-3, Calvert had 30 days from issuance of the lower court's order to file a writ application. Calvert dated his signature on the writ application on August 7, 2009, which was beyond that time period.

[20] St. Rec. Vol. 3 of 3, 1st Cir. Writ Application, 2009-KW-1486, 8/10/09 (dated 8/7/09).

to conduct a diligent investigation, and (b) failed to object to the admissibility of the State's witness testimony; (3) the State failed to timely prosecute him; (4) the evidence was insufficient to support the verdict; and (5) he was subjected to double jeopardy.  On November 23, 2009, the Louisiana First Circuit denied the writ application without stated reasons.[21]

The Louisiana Supreme Court also denied Calvert's related writ application without stated reasons on January 7, 2011.[22]  Over sixteen (16) months later, on May 14, 2012, Calvert submitted a petition for rehearing seeking review of his ineffective assistance of counsel claims not included in his original or supplemental writ applications.[23]  The Court denied the request on June 15, 2012.[24]

---

[21]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2009-KW-1486, 11/23/09.

[22]*State ex rel. Calvert v. State*, 53 So.3d 467 (La. 2011); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2010-KH-0107, 1/7/11; La. S. Ct. Writ Application, 10-KH-107, 1/19/10 (dated 12/16/09, postal metered 12/17/09); La. S. Ct. Supplemental Writ Application, 10-KH-107, 2/4/10 (dated 1/25/10); St. Rec. Vol. 2 of 3, La. S. Ct. Letter, 2010-KH-107, 1/19/10 (postmark of 12/17/09).

[23]St. Rec. Vol. 3 of 3, Petition for Rehearing, 10-KH-107, 5/18/12 (dated 5/14/12, postal metered 5/15/12).

[24]*State ex rel. Calvert v. State*, 90 So.3d 1049 (La. 2012); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2010-KH-0107, 6/15/12.

## II.     The Prior Federal Petition

On February 14, 2011, the clerk of this Court filed Calvert's first petition for federal habeas corpus relief, Civ. Action No. 11-0288"J"(4), in which he raised the following grounds for relief:[25]

(1)     the state court of appeal ruled contrary to *Doyle v. Ohio*, 426 U.S. 610 (1975), when it found no merit in the claim that the prosecutor made an impermissible reference to his failure to make a statement to police;

(2)     the state courts unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984) in finding that he failed to establish ineffective assistance of counsel where counsel:
   (a)     failed to object to the State's supplemental notice of intent to use other crimes evidence;
   (b)     failed to file a bill of particulars to narrow the dates, times and places;
   (c)     failed to compel the attendance of another investigator at the preliminary hearing and suppression motion to refute the testimony of Lieutenant Adams, the CAC interview by the victim, and the victim's allegations of where the incidents occurred;
   (d)     failed to elicit testimony to show that he was exonerated by the DNA evidence;
   (e)     failed to investigate the other incidents with the victim's best friend;
   (f)     failed to investigate the alleged threatening calls to discover the phone call was not in reference to the victim, but instead to her best friend who also levied charges against Calvert;
   (g)     failed to inform the jury that the victim might be fabricating the charges because of her best friend's rape allegations against Calvert, for which DNA evidence exonerated him;
   (h)     failed to elicit testimony that Jim Muller was accused of having sex with A.H.;
   (i)     failed to discover the phone records which would have lead to impeachment evidence against A.H. and her mother;
   (j)     failed to move for a continuance when the prosecutor admitted that she withheld evidence and failed to object or move for disclosure of the withheld evidence;
   (k)     failed to call Calvert's wife to establish that he was not living at the address at the time of the alleged incidents;
   (l)     failed to call Michael Bazor as a witness to testify that he was in jail when A.H. claimed he was there during the alleged rape and that her claim was false;
   (m)     failed to lay a proper foundation to introduce the CAC tapes of A.H.'s statement to impeach A.H.'s testimony;
   (n)     failed to interview Jo Ann Beth or call her as a witness to challenge the State's case;
   (o)     failed to object to the State's leading the jury to believe that the tapes could not be played because they were hearsay;
   (p)     failed to inform the jury that there was no rape kit or DNA evidence in this case
   (q)     failed to file a motion in limine and investigate the prior bad acts evidence

---

[25]Civ. Action 11-0288"J"(4), Rec. Doc. No. 1.

7

(r)      allowed the jury to hear evidence about the other crimes for which DNA evidence exonerated him;
(s)      failed to object to the State's leading the witness to say there were four incidents when there was testimony of only three;
(t)      failed to object to State's leading the witnesses to say four incidents of sexual intercourse occurred when it was only one incident of rape and two touchings;
(u)      failed to properly impeach the witness regarding the inconsistent dates, times, locations, and number of incidents;
(v)      failed to move to sever the counts;
(w)      failed to poll the jury after the verdict;
(x)      failed to object to a juror that was known to Calvert;
(y)      failed to object to the State's repeated reference to his silence to infer guilt; and
(z)      failed to object to repeated prosecutorial misconduct; and

(3)      the Louisiana court of appeal unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), to the facts when adjudicating the sufficiency of the evidence.

On July 27, 2011, the undersigned issued a Report and Recommendation finding that the twenty-six (26) grounds forming his ineffective assistance of counsel claim were not raised or exhausted in any of the state courts.[26] The District Judge adopted the Report and Recommendation and dismissed Calvert's petition on August 12, 2011, for failure to exhaust state court remedies.[27] The Court denied issuance of a certificate of appealability and his post-judgment motion to withdraw some of the unexhausted claims.[28] The United States Fifth Circuit Court of Appeals also denied Calvert's request for issuance of a certificate of appealability on February 2, 2012.[29]

On March 15, 2012, Calvert filed a motion for relief from the District Court's judgment, which the Court denied on March 27, 2012.[30] As outlined above, Calvert later unsuccessfully

---

[26] Civ. Action 11-0288"J"(4), Rec. Doc. No. 15.

[27] Civ. Action 11-0288"J"(4), Rec. Doc. Nos. 16, 17.

[28] Civ. Action 11-0288"J"(4), Rec. Doc. Nos. 18, 19, 20.

[29] Civ. Action 11-0288"J"(4), Rec. Doc. No. 23.

[30] Civ. Action 11-0288"J"(4), Rec. Doc. Nos. 18, 19, 20, 24, 25.

returned to the Louisiana Supreme Court in an effort to seek rehearing to attempt to complete the exhaustion of state remedies.[31]  On July 16, 2012, the Court denied Calvert's later filed motion to reopen his 2011 habeas petition.[32]

### III.  The Current Federal Petition[33]

On February 15, 2013, the clerk of this Court filed Calvert's current petition for federal habeas corpus relief in which he raised the following grounds for relief:[34] (1) the prosecutor made an impermissible reference to his failure to make a statement to police; (2) he received ineffective assistance of counsel where counsel (a) failed to investigate and (b) failed to object to the admissibility of the State's key witness testimony; (3) the evidence was insufficient to support the verdicts; and (4) the Trial Court erred in allowing evidence of other crimes to be used at trial.

In its answer and memorandum in opposition, the State argues that Calvert's federal petition was not timely filed and that he has not properly exhausted state court remedies.[35]  Alternatively, the State argues that the claims raised are without merit.

---

[31]*State ex rel. Calvert v. State*, 90 So.3d 1049 (La. 2012); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2010-KH-0107, 6/15/12; Petition for Rehearing, 10-KH-107, 5/18/12 (dated 5/14/12, postal metered 5/15/12).

[32]Civ. Action 11-0288"J"(4), Rec. Doc. Nos. 26, 27.

[33]This is not a prohibited second or successive petition which would require certification by the circuit court prior to its filing. 28 U.S.C. § 2244(b)(3).  Under 28 U.S.C. § 2244(b)(1) and (2), any new or previously raised claim presented in a second or successive § 2254 petition is to be dismissed.  However, the Fifth Circuit has made clear that "a prisoner's application is not second or successive simply because it follows an earlier federal petition." *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998).  Instead, an adjudication on the merits is necessary before a petition is considered "second or successive." *See Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) (when prior petition is dismissed without prejudice, subsequent filing is not successive) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000) (same)), *cert. dism.*, 531 U.S. 1134 (2001); *Graham v. Johnson*, 168 F.3d 762 (5th Cir. 1999) ("an application filed after a previous application was fully adjudicated on the merits is a second or successive application within the meaning of 28 U.S.C. § 2244(b), even if it contains claims never before raised." (emphasis added)), *cert. denied*, 529 U.S. 1097 (2000). Calvert's prior petition in Civ. Action 11-0288"J"(4) was dismissed without prejudice for failure to exhaust without consideration of the merits of the claims, and the filing of this subsequent petition was not prohibited.

[34]Rec. Doc. No. 1.

[35]Rec. Doc. No. 10.

## IV.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[36] applies to this petition, which is deemed filed in this court under the federal mailbox rule on January 30, 2013.[37] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006) (recognizing the AEDPA's statute of limitations as a threshold determination).

The State argues that Calvert's federal petition was not timely filed and that his claims are not properly exhausted. While the record supports both defenses, for the following reasons, the Court finds that the petition was not timely filed and should be dismissed as time-barred.[38]

---

[36]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Calvert's federal habeas petition on February 15, 2013, when pauper status was granted. According to the official stamps from the Louisiana State Penitentiary, Calvert submitted the petition to the prison officials on January 30, 2013, for forwarding to this federal court for filing. Rec. Doc. No. 1, p. 16. The pleadings were e-mailed that same day to the clerk of court. *Id.*

[38]The limitations defense was not addressed by the State when Calvert filed his prior petition in 2011. The Court did not *sua sponte* raise the issue in its Report and Recommendation in the prior case because the State had not provided a complete record, including the post-appeal Louisiana Supreme Court writ application, for the Court to have done so. *See* Civ. Action 11-0288"J"(4), Rec. Doc. No. 15, p. 5, fn. 13.

## V. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[39] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As calculated above, Calvert's convictions and sentences were final on July 7, 2008. Under the plain language of § 2244, Calvert had one year, or until July 7, 2009, to file a timely federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Calvert's § 2254 petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A. Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v.*

---

[39]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
  A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
  C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

11

*Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In the instant case, the AEDPA filing period began to run on July 8, 2008, the day after Calvert's convictions became final.  The one-year filing period ran uninterrupted for 329 days, until

12

June 2, 2009 when Calvert submitted his first application for post-conviction relief to the state trial court. It remained tolled until July 23, 2009, which was thirty (30) days after the Trial Court ruled and he did not timely file for review. *See Melancon*, 259 F.3d at 401.

The filing period began to run again on July 24, 2009, and did so for fourteen (14) days, when it was interrupted by the submission of a writ application to the Louisiana First Circuit on August 7, 2009. *See Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-70 (5th Cir. 2004). The one-year filing period remained tolled until January 7, 2011, when the Louisiana Supreme Court denied Calvert's related writ application.

The AEDPA filing period began to run again on January 8, 2011, and did so for the remaining twenty-two (22) days, until Monday, January 31, 2011,[40] when it expired. Calvert had no other properly filed state application for post-conviction or other collateral review pending during that time.

The Court is aware of the other filings made by Calvert which do not provide him with any additional statutory tolling. First, on July 8, 2009, Calvert submitted for filing an untimely writ application to the Louisiana Supreme Court. Pursuant to La. S. Ct. Rule X § 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within thirty (30) days of the issuance of the judgment under review or from denial of a timely filed application for rehearing. *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009). As outlined above, Calvert submitted this writ application for filing in the Louisiana Supreme Court on July 8, 2008. This was not within the 30-day time limit allowed in La. S. Ct. Rule X § 5. A writ application which fails to comply with La. S. Ct. Rule X § 5 is not "properly filed" because it is untimely, and it is not pending

---

[40]The thirtieth day was Saturday, January 29, 2011, leaving the last day of the period to fall on Monday, January 31, 2011.

as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler*, 533 F.3d at 318-319; *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same). The United States Supreme Court has made clear that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226). Calvert's 2008 Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period, which expired on January 31, 2011, as calculated above.

Even if that Louisiana Supreme Court writ application was considered properly filed and to provide some tolling benefit, his federal petition would still be untimely filed in this Court. Under such an alternative calculation, his conviction would not have been considered final until July 16, 2009, which would have been ninety (90) days after the Louisiana Supreme Court's post-appeal ruling after which he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1). By that date, Calvert had already submitted his first application for post-conviction relief to the state trial court.

Thus, the one-year filing period would remain tolled and would not have begun to run until July 24, 2009, the day after the ruling by the state trial court on his post-conviction application was no longer pending as shown above. The one-year period would run for fourteen (14) days, until it was interrupted again by the submission of Calvert's writ application to the Louisiana First Circuit

14

on August 7, 2009.  *See Grillette*, 372 F.3d at 70.  The one-year filing period would remain tolled until January 7, 2011, when the Louisiana Supreme Court denied Calvert's related writ application.

The one-year filing period would begin to run again on January 8, 2011, and would run for the remaining 351 days, until December 27, 2011, when it would have expired.  During that period, Calvert had no other properly filed state post-conviction or other collateral review pending in any state court.

The Court recognizes that, during the running of this alternative time period, under the applicable mailbox rule, on February 2, 2011, Calvert submitted for filing his first federal petition for habeas corpus relief.  This prior federal habeas petition was not an application for state post-conviction or other collateral review and does not fall under the provisions of § 2244(d)(2).  *Duncan*, 533 U.S. at 181-82; *Grooms v. Johnson*, 208 F.3d 488, 489 (5th Cir. 1999).  Calvert therefore would not be entitled to statutory tolling for the time his first federal petition was pending or for the pendency of his federal appeal and post-judgment motions thereafter.  *Id.*, 533 U.S. at 182; *Grooms*, 208 F.3d at 489.

Calvert also would not be entitled to any statutory tolling for the extremely untimely and improperly filed petition for rehearing he submitted to the Louisiana Supreme Court on May 14, 2012. Under either calculation, that pleading was filed well-after the expiration of the AEDPA filing period.  In addition, the record reflects that the petition for rehearing was <u>not</u> filed within the 14-day period permitted under Louisiana law.  *See* La. Sup. Ct. R. IX, § 1 (stating that an "application for rehearing must be filed with the clerk on or before the fourteenth calendar day after the mailing of the notice of judgment").  Instead, Calvert did not submit the petitioner for rehearing to the Louisiana Supreme Court until May 15, 2012, over sixteen (16) months after that court's initial

ruling on January 7, 2011.  In this federal circuit, tolling benefits are only granted for timely filed petitions.  *Accord*, *Wilson*, 564 F.3d at 702 (addressing a timely filed application for rehearing under the Louisiana Supreme Court rules); *Hooks v. Quarterman*, 224 F. App'x 352, 353 (5th Cir. 2007) (allowing tolling for timely filed application for rehearing without requiring that it be considered by the Texas court); *see also*, *Torns v. Miss.*, 54 F. App'x 592, 2002 WL 31730353, at *1 (5th Cir. Nov. 22, 2002) (motion for rehearing did not warrant tolling because they were not "properly filed" under Mississippi state law).  Calvert's untimely petition would not provide him with any tolling benefit.

Furthermore, even after that attempt for a rehearing in the Louisiana Supreme Court was resolved against him, Calvert waited another 228 days before submitting the instant federal petition for filing in this Court.  Therefore, under either calculation, Calvert's federal petition is not timely filed.

### B.    No Basis for Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Calvert has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling under the § 2244(d) computation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent cited above.

Had Calvert diligently pursued the full-extent of his state court remedies in a timely manner, he could have better preserved the federal filing period. The record instead reflects that he engaged in piecemeal presentation of his issues and incomplete pursuit of relief in both the state and federal courts. There is no basis for equitable tolling in this record.

Calvert's federal petition is deemed filed in this Court on January 30, 2013, which was two years after the AEDPA filing period expired on January 31, 2011. Even under the alternative calculation above, the federal petition was not filed until thirteen (13) months after expiration of the calculated filing period. Calvert's petition should be dismissed as time-barred.

## VI. Recommendation

It is therefore **RECOMMENDED** that Mikell Calvert's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 12th day of February, 2014.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[41] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.